## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARK MAXSON, | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| JAMES DWYER, JOHN DUFFY, | ) | No. 16 C 9417 |
| WILLIAM MARLEY, ANGELO | ) | |
| PESAVENTO, and the CITY OF CHICAGO, | ) | Honorable Robert W. Gettleman |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS

NOW COMES the Plaintiff, MARK MAXSON, by and through his attorney,

ELLIOT R. ZINGER, and presents his PLAINTIFF'S RESPONSE TO DEFENDANTS'

PARTIAL MOTION TO DISMISS, and in support thereof, states as follows:

All of the Defendants' arguments in their Partial Motion To Dismiss are responded to

below. Each of these arguments must fail, since they have been repeatedly raised in similar 7th

Circuit Jon Burge related torture cases. Each of Defendants' arguments have been rejected by the

7th Circuit and District Court judges.

## I. Defendants' Argument that Count I Fails To Set Forth a Short Plain
## Statement That Gives Proper Notice To Defendants Of Plaintiff's Claims Has No Merit.

Defendants' initially claim that Count I's "smorgasbord of buzzwords" fails to set forth a

"short plain statement" that gives Defendants fair notice of the claims against them and fails to

state a claim that is "plausible on its face." (p. 4, Motion). First, Defendants' are inconsistent in

their Motion regarding the relief they seek as to Count I. On page 4, Defendants assert that

Count 1 "violates Rule 10 and should be *dismissed without prejudice* to be plead properly." In

their Conclusion (p. 15, Motion), Defendants' indicate that the claims asserted in Count I…

"should be *dismissed with prejudice* because they fail to state a claim upon which relief may be granted." Neither of Defendants assertions have merit.

First, Defendants' nearly identical argument relating to an alleged Rule 10 violation was soundly rejected by Judge Gottschall in *Patterson v. Burge*, 328 F. Supp. 2d 878 (2004). After reviewing a very similarly drafted Complaint in *Patterson*, the District Court ruled that the federal notice pleading standard only required that "a complaint state the plaintiff's legal claim, ... together with some indication ... of time and place." C*iting*, *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). The Court further indicated that as long as the complaint contains "enough to allow the court and the defendant[s] to understand the gravamen of [his] complaint," and the facts as alleged show "a legitimate entitlement to relief," his claims will not be dismissed. *Citing*, *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir.2000). Addressing the Defendants' similarly claimed "confusion" as to what they are being charged with, the Court in *Patterson* stated that… ***"[i]t cannot seriously be disputed*** in this case that Patterson's complaint contains "enough" to inform the court and defendants of his grievance. "Patterson minces no words in accusing defendants of framing, torturing, maliciously prosecuting, wrongfully convicting and falsely imprisoning him on death row for murders he did not commit. Taking these allegations as true, as the court must at this time, it is clear that Patterson has suffered violations of his rights that are actionable under federal and state law. What is less clear, however, is which rights were violated under which laws by which defendants. The answer to this question matters profoundly, but *it need not be pleaded with as much detail as defendants' arguments imply."*

As in *Patterson*, Defendants' know exactly what they are being accused of in this case. Defendants' admit as much in their motion when than they indicate that Plaintiff's core allegations are contained in paragraph 112 (*see* p. 3-4) and the constitutional allegations are contained in paragraph 108 (and incorporated into Count I). Further, the individual acts of all Defendants are clearly set forth in Plaintiff's Statement of Facts, paragraphs 10-35 (which, unlike the two page Introduction, which is a general overview of the case) are all *very short and plain statements* which are also properly incorporated into Count I. As such, Defendants claim that they are confused as to what the allegations are is frivolous. In short, Plaintiff, a witness who initially sought to help the police, was repeatedly threatened, beaten, emotionally abused, denied counsel and kept on a steel bench in the police station for days against his will, until he verbally agreed to give an unsigned court reported statement. The detectives involved in Maxson's complaint are now known to have been engaged in a pattern and practice of similarly torturing hundreds of other African American citizens into signing false confessions during the Jon Burge reign of terror. Unfortunately, in 2017, there is nothing at all confusing about Plaintiff's allegations.

### A. Defendants' Claim that Plaintiff Has Not Alleged a Viable Brady Claim Fails

Defendants assert the Plaintiff has not alleged a viable *Brady* claim. (p. 4, Motion). Defendants' exact arguments have been repeatedly rejected by other District Courts in Burge related torture cases. Defendants' are fully aware of this since several of the attorneys of record District Court cases cited in this Response appear in the instant case. For example, in the recently decided *Smith v. Burge*, 2016 U.S. Dist. LEXIS 163361 (N.D. Ill. Nov. 28, 2016), Judge St. Eve, on the precise *Brady* issue, explained why the Defendants' reliance upon *Saunders-El v. Rohde*,

3

778 F.3d 556, 561 (7th Cir. 2015) and *Gauger v. Hendle*, 2002 U.S. Dist. LEXIS 18002 (7th Cir. 2002) (both relied upon herein) is misplaced. In her decision, Judge St. Eve cites multiple other Burge related torture claims in denying Defendants' motion to dismiss on *Brady* grounds, including *Patterson, Tillman, Cannon and Ruiz-Cortez. (citations infra)*.

In *Smith v. Burg*e, the District Court soundly rejected the contention that Plaintiff's *Brady* claim was foreclosed by *Gauger* and *Saunders-El*. As in the case at bar, Defendants' claimed that Plaintiff based his *Brady* claim solely on Defendant Officers' failure to disclose the fact that they allegedly fabricated Plaintiff's confession. The *Smith* Court noted that in the context of police officers remaining silent following the coerced confession and fabrication of evidence, the *Saunders-El* court reasoned that Plaintiff was foreclosed from alleging a Brady violation for "keeping quiet about their wrongdoing, not for failing to disclose any existing piece of *evidence* to the prosecution." *Saunders-El* also relied on *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003), where the 7th Circuit rejected Plaintiff's argument that *Brady* requires police to disclose truthful versions of statements made during interrogations." *Saunders-El*, 778 F.3d at 562. The *Gauger* court reasoned that the obligation under *Brady* "falls out, because Gauger knew what he had said at the interrogation." *Id.* at 360.

The *Smith* Court held however, that after reviewing Plaintiff's well-pleaded allegations and all reasonable inferences in his favor, Plaintiff based his *Brady* violation on more than just Defendant officers' failure to disclose their unlawful interrogation tactics in relation to his coerced confession. The *Smith* Court held that Plaintiff *also* alleged that Defendant officers suppressed the implements of their torture and *more importantly*, Plaintiff alleged Defendants *suppressed and destroyed evidence of systemic torture and abuse in Area 2, obstructed*

*investigations into the CPD's systemic torture, and discredited findings of systemic torture*. *Smith* held, keeping *Gauger* and/or *Sornberger* decisions in mind, courts in this district have concluded that similar allegations state a *Brady* claim based on events that transpired outside of the interrogation room. *See e.g., Tillman v. Burge*, 813 F. Supp. 2d 946, 962 (N.D. Ill. 2011) (allegations of "'suppressing, destroying, and preventing the discovery' of exculpatory evidence, including that of "the instruments of torture," and "obstructing and improperly influencing investigations" are "circumstances that substantially exceed what Tillman was aware of based on his presence at the interrogation"); *Cannon v. Burge*, No. 05 C 2192, 2006 U.S. Dist. LEXIS 4040, 2006 WL 273544, at *12 (N.D. Ill. Feb. 2, 2006) ("Plaintiff's knowledge of what transpired in the interrogation room does not relieve the City Defendants of their obligation under *Brady* to disclose exculpatory evidence regarding what transpired outside the interrogation room, or preclude the Court from finding the existence of a *Brady* violation."); *Patterson v. Burge*, 328 F. Supp. 2d 878, 889 (N.D. Ill. 2004) ("in addition to charging defendants with hiding the fact that his confession was coerced and fabricated — an allegation which by itself might not state a *Brady* claim after *Gauger* — Patterson accuses defendants of obstructing justice and violating his right to a fair trial through actions they took outside the interrogation room."); *see also Ruiz-Cortez v. City of Chicago*, 2016 U.S. Dist. LEXIS 148063, (7th Cir. 2016) (Plaintiff's claims "relate to things that ranged far outside Plaintiff's knowledge," including a "pattern of misconduct and obstruction of justice.").

Thus, the *Smith* Court held that the decision in *Saunders-El* does not change this reasoning as it relates to Plaintiff's allegations of Defendants' suppressing the implements of their torture, destroying evidence of systemic torture and abuse in Area 2, obstructing investigations

5

into the CPD's systemic torture and and discrediting findings of systemic torture. As such, the *Smith* court concluded that at this stage of the proceedings, Plaintiff's allegations are distinguishable from the facts in *Saunders-El* because Plaintiff is not merely basing his *Brady* claim on Defendants "keeping quiet about their wrongdoing." *Saunders-El*, 778 F.3d at 562. All such allegations have been raised in Plaintiff's Complaint which is the subject of the Motion.

The *Smith* Court also rejected Defendants' argument that Plaintiff has "pleaded himself out of court" by alleging that Defendant Daley and other high ranking Assistant State's Attorneys were aware of the Area 2 torture as early as 1982. Citing *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law."). To clarify, "a police officer's *Brady* obligations are discharged by disclosing material exculpatory evidence to the prosecutor, for it is the prosecutor's responsibility to turn the evidence over to defense counsel." *Beaman*, 776 F.3d at 512. In other words, Defendants argue that because the State's Attorney's Office was aware of the Area 2 torture as early as 1982, the prosecutors already knew the very *Brady* material at issue in Plaintiff's claim. Defendants again vehemently raise this argument in their Partial Motion to Dismiss.

*Smith* held that Defendants' argument did not take into account Plaintiff's conspiracy allegations — discussed in detail below — in which he states that Defendant Daley (as State's Attorney and Chicago's Mayor), the State's Attorney's Office, and the CPD, among others, conspired with each other to deprive Plaintiff of his constitutional right to a fair trial by withholding exculpatory evidence of a pattern and practice of torture in Area 2. The *Smith* court noted that the Seventh Circuit has already rejected the argument that police officers discharge

their *Brady* duties when they disclose exculpatory evidence to a prosecutor who was part of the alleged conspiracy. *See Whitlock v. Brueggemann*, 682 F.3d 567, 576 (7th Cir. 2012) ("It is not likely that the police may take shelter behind a prosecutor who is conspiring with them to fabricate false evidence against innocent suspects."). As such, under *Whitlock* and Plaintiff's conspiracy allegations, Plaintiff has not "pleaded himself out of court" as Defendants suggest.

Further, the *Smith* Court similarly rejected Defendants' contention that Plaintiff's claim fails because *Brady* "deals with the concealment of exculpatory evidence unknown to the defendant," *see Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007), and Plaintiff and his criminal defense attorney should have been aware of Area 2's pattern and practice of torture and abuse. Defendants' in *Smith (and in our case)* specifically asserted that the Andrew Wilson case was highly-publicized before Plaintiff's 1984 criminal trial. *See People v. Wilson*, 116 Ill. 2d 29, 506 N.E.2d 571, 106 Ill. Dec. 771 (1987). Wilson's convictions stemmed from an occurrence that occurred in February 1982, his first criminal trial took place in 1983, and, in 1987, the Supreme Court of Illinois reversed and remanded Wilson's convictions based on the involuntariness of his coerced confession. *See Id.* at 41-42; *see also United States v. Burge*, 711 F.3d 803, 814 (7th Cir. 2013). The court found that the assertion that Plaintiff and his defense counsel should have known about Area 2's pattern of torture and abuse based on the 1983 Wilson trial asks the Court to *ignore Plaintiff's well-pleaded allegations that evidence of the systemic Area 2 torture and abuse was not available to Plaintiff or his counsel at the time of his 1983 suppression hearing*. Also, Defendants' argument asks the Court to make an unreasonable factual inference at this procedural posture, namely, that defense counsel and Plaintiff should have known about systemic torture in Area 2 well before evidence relating to this pattern and practice was readily available.

*See People v. Patterson*, 192 Ill. 2d 93, 109, 735 N.E.2d 616, 249 Ill. Dec. 12 (2000); *Wilson*, 116 Ill. 2d at 35-36. The Smith court thus held that Defendants' argument failed. Given Defendants herein are raising nearly identical *Brady* arguments, the Defendants' motion similarly fails.

### B. Defendants Argument that Plaintiff Does not Allege a Viable Federal Claim For False Testimony Also Fails

Defendants' allege that Plaintiff has failed to plead any facts that would put Defendant Marley on notice of any false testimony that he is accused of providing. (p. 9, Motion), Further, Defendants' contend that Defendants Duffy and Pesavento have absolute immunity from any testimony that they provided in Plaintiff's criminal case. (*Id*).

As to the Defendants' claim of absolute immunity, reliance upon such doctrine under these circumstances is misplaced. The same argument was rejected in *Patterson v. Burge*, *supra*. In *Patterson*, the District Court considered Defendants' argument that to the extent Patterson's due process claim was based upon allegations that Defendant Officers testified falsely, they are absolutely immune from liability under *Briscoe v. LaHue*, 460 U.S. 325, 335-36, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). *Briscoe* is the exact case relied upon by Defendants' in their motion. However, the *Patterson* Court held that an exception to the rule of absolute testimonial immunity exists for "complaining witnesses" under *Cervantes v. Jones*, 188 F.3d 805, 809 (7th Cir.1999). A complaining witness is one "who actively instigated or encouraged the prosecution of the Plaintiff." The District Court held that given Patterson's allegations that Defendants' "caused his wrongful charging, prosecution and conviction," they could qualify as complaining witnesses exempt from absolute testimonial immunity. The Court noted that the determination of who

8

qualifies as a complaining witness is highly fact specific and best not resolved on a motion to dismiss. *Citing Cervantes*, 188 F.3d at 810 and *Ienco*, 286 F.3d at 1000 n. 9 (declining to decide on appeal fact intensive issue of whether complaining witness exception applies). Thus the Court concluded that, at this stage, when viewed in a light favorable to Patterson, the allegations in the complaint suggest that Defendants' *are complaining witnesses exempt from absolute testimonial immunity*. Obviously, the same rationale applies in our case.

Finally, Defendants' claim that Plaintiff has failed to plead any facts that would put Defendant Marley on notice of any false testimony that he is accused of providing ignores the well plead Federal and State conspiracy claims. Plaintiff has provided more than sufficient facts to show that all of the Defendant Officers conspired to coerce a false confession resulting in Plaintiff's wrongful conviction. As such, the acts of one are the acts of all, as will be discussed below, including false testimony.

### II. Defendants Argument That Plaintiff's Federal Claim for Failure to Intervene is Inadequate Ignores Both the Facts Set Forth in the Complaint and the Relevant Case Law

Defendants claim that there is no plausible basis for Plaintiff's failure to intervene claim. (p. 9, Motion). Defendants' correctly cite *Chavez v. Illinois State Police*, 251 F. 2d 612, for the proposition that an officer can be held liable under Section 1983 if he had reason to know that another officer was committing a constitutional violation and had the realistic opportunity to intervene to prevent the harm from occurring. (p. 9). Defendants' argue that Plaintiff has failed to identify the conduct that required intervention and whether the Defendants had knowledge of such conduct and the opportunity to prevent it. (Id.) Given Plaintiff's earlier cited allegations that

all of the Defendants' acted in concert and conspired to to extract a false confession to a horrible

murder through threats, beatings and unlawful detention, Defendants' argument clearly fails.

Again, *Smith v. Burge*, *supra,* rejects Defendants' precise argument in the case at bar, not

only as it related to the Defendant officers, but also to the host of other Defendant officials sued

in that case. The *Smith* court, addressing the precise argument raised by Defendants' herein, held

that "Plaintiff has sufficiently set forth his failure to intervene claim under the federal pleading

standards by alleging that Defendants Byrne, Dignan, and Burge caused his wrongful charging,

prosecution, conviction, and imprisonment by physically coercing him, fabricating his false

confession, and withholding and suppressing exculpatory evidence." The *Smith* Court held that

the fact that  various officials were not at Area 2 at the time of Plaintiff's torture and coerced

confession does not absolve these Defendants under Plaintiff's theory of liability. *Citing*,

*Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). In the case at bar, all of the Defendant

Officers were at the station and Plaintiff has alleged that all such officers were "directly involved

in the detention and interrogation of the Plaintiff." Further, Plaintiff detailed that all such officers

were in close proximity to one another and knew or should have know of the unlawful detention,

threats, beatings, denial of an attorney and later gave false testimony in procuring a conviction.

(*See* pars. 13-25, Complaint.) The acts of the officials, although not named as parties, are all well

documented. Again, there is no surprise or confusion here and Plaintiff clearly sets forth a proper

failure to intervene claim pursuant to *Smith* and the cases cited therein.

### III. DEFENDANTS' ARGUMENT THAT ANY FEDERAL CLAIMS FOR FALSE ARREST AND FALSE IMPRISONMENT ARE TIME BARRED IS CORRECT; HOWEVER, PLAINTIFF NEVER RAISED SUCH CLAIMS IN HIS COMPLAINT.

Plaintiff agrees with Defendants' contention regarding false arrest and false imprisonment. (p. 10, Motion). Consequently, Plaintiff did not include such counts in his Complaint.

### IV. DEFENDANTS' ARGUMENT THAT GENERALIZED CLAIMS OF A CONSPIRACY DO NOT STATE A CLAIM SIMILARLY IGNORES THE FACTS SET FORTH IN THE COMPLAINT AS WELL AS RELEVANT CASE LAW.

Defendants' argue that Plaintiff has failed to state a claim for conspiracy. (p. 11, Motion). As argued above, Defendants' incorrectly rely upon *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015) (p. 13, footnote 6, Motion) and *Sornberger v. City of Knoxville, 434 F. 3d 1006* (7th Cir. 2006) (p. 13, footnote 5, Motion) in their argument that there exists no underlying constitutional claim. Plaintiff's Response in his section on *Brady* (*see* pps. 3-8, Sec. A, *supra*) fully discusses why Defendants' reliance on these cases is misplaced.

The District Court in *Kitchen v. Burge*, 781 F. Supp. 2d 721, (7th Cir. 2011), clearly set forth the constitutional basis for Federal Conspiracy claims applicable here. As in the case at bar, Kitchen alleged Section 1983, 1985 and 1986 violations. In *Kitchen*, Judge Lefkow instructed that Plaintiff's three claims (as here), were (1) a claim under § 1983 for conspiracy to violate plaintiff's constitutional rights; (2) a claim under § 1985 for conspiracy to deprive plaintiff and other African Americans of the equal protection of the laws and/or of equal privileges and immunities under the law; and (3) a claim under § 1986 for failure to prevent the § 1985 conspiracy.

The *Kitchen* Court broke down the three violations as follows: 42 U.S.C. § 1983 creates a federal cause of action for the "deprivation under color of state law of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Fitzpatrick*

*v. City of Hobart*, No. 2:03-CV-359 PS, 2006 U.S. Dist. LEXIS 68997 (N.D. Ind. Sept. 25,

2006). Plaintiff must show that the defendants both "1) deprived them of a right secured by the

Constitution or the laws of the United States; and 2) that the defendants acted under color of state

law." As for claims under § 1985(3), "four elements are required: (1) a conspiracy; (2) a purpose

of depriving any person of equal protection of the laws; (3) an act in furtherance of the

conspiracy; and (4) injury to one's person or property or a deprivation of a right or privilege of a

citizen of the United States." *Malone v. American Friends Service Committee*, 213 Fed. App'x.

490, 494-95 (7th Cir. 2007). Finally, the *Kitchen* Court indicated that Section 1986 "creates a

cause of action against a person that neglects or refuses to stop a conspiracy to violate the civil

rights of a member of a protected class." *Id.* at 494.

Applying the law to the similar facts alleged, The *Kitchen* Court held that there existed

underlying predicate violations of constitutional rights and racial animus sufficient to state a

claim. The same is undoubtedly true in the case at bar. Therefore, Defendants Motion related to

conspiracy must be denied.

## V. DEFENDANTS ARGUMENT THAT STATE LAW CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM IS TIME BARRED FAILS.

Defendants' contention that Plaintiff's claim for Intentional Infliction of Emotional

Distress is time barred (p. 15, Motion) is simply incorrect. District Courts have repeatedly

rejected this exact argument when finding that similar Intentional Infliction of Emotional

Distress claims were clearly intertwined with a Plaintiff's Malicious Prosecution claim. *See*

*Hobbs v. Cappelluti*, 899 F. Supp. 2d 738 (7th Cir. 2012); *Smith v. Burg*e, 2016 U.S. Dist. LEXIS

163361 (7th Cir. 2016) and *Tillman v. Burge*, 813 F. Supp. 946 (7th Cir. 2011). In *Wallace v. City*

12

*of Zion, 2011 U.S. Dist. LEXIS 82940* (7th Cir. 2012) the court held that "because Plaintiffs'

IIED claim was based upon the facts that support Plaintiffs' malicious prosecution claim,

Plaintiffs' IIED claim did not accrue *until the charges against them were dismissed. See also*,

*Gvozden v. Mill Run Tours, Inc.*, 2011 U.S. Dist. LEXIS 32889, (7th Cir. 2011) (IIED claim

accrued upon termination of criminal proceedings where the Plaintiff claimed that "throughout

the investigation and the trial Defendants' suppressed exculpatory evidence resulted in his severe

emotional distress").

As was the case in *Hobbs, supra*, and other cited cases, Plaintiff herein has clearly

alleged that "defendant officers physically and mentally abused him during his interrogation and

failed to come forward with a truthful version of events during and after his detention and

incarceration." (*Hobbs* at 762). In fact, any reading of the facts alleged in the complaint shows

that Plaintiff suffered severe emotional distress *for nearly a quarter of a century.* As a

wrongfully accused child killer and rapist, Plaintiff lived every moment for 25 years with a target

on his back. Defendants' reliance upon *Bridewell* (p. 15, Motion) is misplaced. In *Smith v. Burg*e,

the District Court rejected this precise *Bridewell* argument, holding that under *Parish v. City of*

*Elkhart*, 614 F.3d 677, 683 (7th Cir. 2010), Plaintiff has directly attacked the validity of his

conviction. Thus the Court held, examining Plaintiff's well pleaded facts as true and all

inferences in his favor, Plaintiff bases his IIED claim on Defendants' coercing his *confession by*

*torture, constructing and fabricating his confession, and procuring his prosecution, conviction,*

*and imprisonment via his coerced and fabricated confession.* Under these facts, the court

concluded, Plaintiff has directly attacked the validity of his conviction under *Parish*, *supra*. The

District Court further held that under Illinois' adoption of *Heck v. Humphrey*, 512 U.S. 477,487

(1994), a Plaintiff is barred from bringing a claim that is inconsistent with his valid conviction *until the conviction is set aside. Citing, Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102, 1112, 948 N.E.2d 1100, 350 Ill. Dec. 593 (4th Dist. 2011). Since Illinois has adopted *Heck* for state law claims, Defendants IIED argument fails. *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 803 (N.D. Ill. 2013).

Plaintiff has sufficiently alleged that his IIED claim is clearly intertwined with Plaintiff's Malicious Prosecution claim; such cause of action therefore arises when his conviction is vacated.

WHEREFORE, Plaintiff prays that DEFENDANTS' PARTIAL MOTION TO DISMISS be denied in its' entirety.

Dated: February 21, 2017                    Respectfully submitted,


                                            ELLIOT R. ZINGER, Esq.
                                            By:          /s/Elliot R. Zinger
                                            One of Mark Maxson's Attorneys



Elliot R. Zinger, Esq.
ELLIOT R. ZINGER P.C.
309 West Washington Street
Suite. 700
Chicago, Illinois 60606
(312) 782-9464
 Attorney No. 52885