IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARK MAXSON | ) | |
| | ) | No.   16 C 9417 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Gettleman |
| | ) | |
| The CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**

Defendant City of Chicago, by its attorneys The Sotos Law Firm, P.C., and Defendants John Duffy, Angelo Pesavento and William Marley, by their attorneys Hale Law, LLC, hereby submit this reply in support of their partial motion to dismiss Plaintiff's Complaint, and state as follows:

**I.     PLAINTIFF RELIES ON THE WRONG PLEADING STANDARD.**

Plaintiff's response is premised on an old pleading standard. All of the cases Plaintiff cites in response to Section I pre-date the Supreme Court's pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff has failed to make a case for why his complaint complies with *Iqbal* and the Court should not be forced to make one for him.

Plaintiff also fails to adequately respond to Defendants' charge that Count I's "smorgasbord" should be dismissed without prejudice because it violates Rule 10. Plaintiff wrongly claims Defendants seek more "detail," when what is needed instead is a short plain statement of "which rights were violated under which laws by which Defendants," the answers to which "matter profoundly." (Response at 2).

1

### II. PLAINTIFF'S *BRADY* CLAIM FAILS AS A MATTER OF LAW.

Plaintiff has two *Brady* claims: (1) failing to disclose allegedly coercive tactics Defendants used to extract his allegedly false confession, and (2) failing to disclose an alleged wider practice of Area 2 detectives coercing false confessions in other cases. Defendants' motion explained that the first claim fails because Plaintiff necessarily knew about the circumstances of his own confession, and that the second claim fails because Plaintiff has pleaded that both he and prosecutors knew or should have known about allegations concerning abusive tactics at Area 2 under Jon Burge.

Plaintiff does not challenge any of the Seventh Circuit cases or the analysis of these cases in Defendants' opening brief. Instead, Plaintiff's response relies almost entirely on the district court decision in *Smith v. Burge*, No. 16 C 3404, 2016 WL 6948387 (N.D. Ill. Nov. 28, 2016). Defendants respectfully disagree with *Smith*, which in any event is not binding on this Court. More than that, even under *Smith*'s proposed extension of *Brady* beyond *Gauger, Harris,* and *Saunders-El*, Plaintiff's allegations do not meet the threshold to survive dismissal.

#### A. Plaintiff's First *Brady* Claim Is Indistinguishable From The *Brady* Claims Rejected In *Gauger, Harris* and *Saunders-El.*

While Plaintiff cites several district court cases, he utterly fails to meaningfully address circuit precedent that defeats his first *Brady* claim as a matter of law. As discussed in the opening brief, although *Gauger* is frequently cited for the principle that information that was known to a plaintiff could not have been suppressed, the case actually stands for a broader and much more comprehensive principle of law: police officers do not have a *Brady* duty to tell the truth (i.e., disclose their own misconduct) or

2

to create truthful exculpatory evidence (again, disclose their own misconduct). *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003). Specifically, the plaintiff in *Gauger* attempted to bring a *Brady* claim based on the defendant police officers' failure to tell the truth about his interrogation. *Id.* The Seventh Circuit rejected the *Brady* claim stating: "We find the proposed extension of Brady difficult even to understand. It implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence." *Id.*

To emphasize this point of law, the court observed that adopting the proposed extension of *Brady* would not benefit Mr. Gauger in any event: "Indeed the duty to disclose falls out, because Gauger knew what he had said at the interrogation." *Id.* Thus, *Gauger* does not stand for the principle that there is no *Brady* duty to disclose that which is known to a criminal defendant—this principle is a fundamental element of the claim itself and is neither new nor groundbreaking nor even clarifying. Instead, *Gauger* sets forth a corollary to the long-standing principle of law that the state has no duty to conduct an investigation or assist in the preparation of a defendant's case. *See e.g. United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002)("Brady prohibits suppression of evidence, it does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel."); *Harris v. Kuba,* 486 F.3d 1010, 1017 (7th Cir.2007) (Brady "'does not place any burden upon the government to conduct a defendant's investigation or assist in the presentation of the defense's case'" (internal citations omitted)). The corollary is that police officers do not have a *Brady* duty to tell the truth and the state does not have a *Brady* duty to create truthful exculpatory evidence.

To the extent district courts in this circuit have held otherwise (and as will be discussed below, they really haven't), they cannot not overturn *Saunders-El* which indisputably holds that police officers are not required to disclose their misconduct whether that misconduct occurs in or out of the interrogation room. *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015), reh'g denied (Feb. 26, 2015). The plaintiff in *Saunders-El* attempted to base a *Brady* claim on allegations that the defendant police officers planted blood evidence at the crime scene in an attempt to frame plaintiff for a crime he did not commit and failed to disclose their misconduct to the prosecutor. *Id*. at 561. Specifically, the plaintiff claimed "that the police officers' failure to admit their misdeeds to the prosecution amounts to a withholding of exculpatory evidence in violation of Brady . . . " *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015), reh'g denied (Feb. 26, 2015). The court rejected the claim "because our case law forecloses Saunders-El's theory of *Brady*." The court explained:

> We have dealt on several occasions with similar Brady claims concerning accusations of police dishonesty. In *Gauger v. Hendle*, for instance, we rejected the plaintiff's argument that Brady requires police to disclose truthful versions of statements made during interrogations, finding "the proposed extension of Brady ... difficult even to understand," since "[i]t implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence." 349 F.3d 354, 360 (7th Cir.2003), overruled in part on other grounds by *Wallace v. City of Chicago*, 440 F.3d 421, 423 (7th Cir.2006). Later, in *Sornberger v. City of Knoxville*, we determined that Brady cannot "serve as the basis of a cause of action against [police] officers for failing to disclose [the circumstances surrounding a coerced confession] to [a] prosecutor...." 434 F.3d 1006, 1029 (7th Cir.2006) (citation and internal quotation marks omitted).

*Id*. at 562. The court continued:

> Consequently, in *Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir.2007), we upheld the dismissal of a Brady claim premised on an argument "that an officer is 'suppressing' evidence of the truth by making [a] false statement to a

4

prosecutor," noting that "[t]his court has already foreclosed this extension" of *Brady*.

> In the end, *Saunders– El* seeks to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing, not for failing to disclose any existing piece of evidence to the prosecution. But our case law makes clear that Brady does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution.

*Id.* (emphasis in original).

Plaintiff's offers no meaningful response other than to piggyback on the district court's decision in *Smith*, which as will be addressed below is factually distinguishable from this case. Importantly, Plaintiff fails to address the court's express statement that "our case law makes clear that *Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution." Plaintiff is essentially arguing that although the *Saunders-El* court rejected the plaintiff's *Brady* claim based on misconduct in the investigation of the plaintiff's very own case, it would have allowed the claim to proceed had the plaintiff alleged that the defendant officers there had planted evidence during the course of their investigations in other cases. Nothing in *Saunders-El* (or *Brady* for that matter) even remotely supports that argument. Furthermore, Plaintiff's argument misses the critical point made by *Gauger* and *Saunders-El*, there is a fundamental difference between failing to disclose wrongdoing during an investigation and suppressing a piece of evidence uncovered in an investigation.

Likewise, in the other district court opinions cited by Plaintiff (all but one decided before *Saunders-El*), actual evidence was alleged to have been suppressed. *Patterson v. Burge*, 328 F. Supp. 2d 878, 883 (N.D. Ill. 2004)(detectives suppressed that they

5

were told by "several persons that [two other individuals and not plaintiff] killed [the victims]."); *Tillman v. Burge*, 813 F. Supp. 2d 946, 963 (N.D. Ill. 2011) (plaintiff's "allegations relate to circumstances that substantially exceed what Tillman was aware of based on his presence at the interrogation"); *Cannon v. Burge*, 2006 WL 273544, at *2, 12 (N.D. Ill. Feb. 2, 2006), aff'd, 752 F.3d 1079 (7th Cir. 2014)(failed to disclose statements made by co-defendant's brother before he was coerced "as well as other [undefined but not torture findings] exculpatory evidence"); *Orange v. Burge*, 2005 WL 742641, at *2, 10 (N.D. Ill. Mar. 30, 2005)(failed to disclose co-defendant's statements prior to coercion and "and other [undefined but not torture findings] evidence.") *Ruiz-Cortez v. City of Chicago*, No. 11 C 1420, 2016 WL 6270768, at *16 (N.D. Ill. Oct. 26, 2016)(motion for summary judgment denied where there was no evidence that plaintiff "was aware of Rodriguez's involvement in crimes and Lewellen's pattern of misconduct and obstruction of justice"). In any event, these opinions do not change the holding in *Saunders-El*. Since Defendant Officers had no duty to disclose or tell the truth about their alleged misconduct, Plaintiff's *Brady* claim must be dismissed with prejudice.

### B. Plaintiff's Heavy Reliance On The District Court Decision In *Smith v. Burge* Is Misplaced and Does Not Save His Second *Brady* Claim.

Instead of addressing the binding Seventh Circuit cases discussed above, Plaintiff devotes his entire *Brady* argument to reviewing *Smith*. Even if this Court is inclined to follow *Smith* (which it should not), it does not help to keep Plaintiff's second *Brady* claim alive. Plaintiff's own factual allegations demonstrate that *Smith* is easily distinguished, because Plaintiff's 1992 arrest occurred long after details about Area 2 allegations were well known, publicized and disclosed to prosecutors.

Smith alleges that he spent approximately twenty years incarcerated due to a wrongful conviction for home invasion, armed robbery, and murder in 1984. *Smith v. Burge*, 2016 WL 6948387 * 1. Specifically, Smith claims that defendant detectives – at the direction of Jon Burge (also a defendant) – tortured his confession and falsely charged him with murder. *Id.* at *2. As a part of his torture allegation, Smith says that these detectives hit Plaintiff several times with a rubber nightstick while Plaintiff was seated and handcuffed. *Id.* at 3. After that, Smith alleges that the detectives "pulled a plastic bag over [his] head, put a thick brown rubber band around the bag, and told [him] that they were going to show him how to suffocate a dope dealer." *Id.* Smith says he was bleeding and had blood on his clothes, but says a detective "turned on a hose, washed the blood off of [his] shirt, jacket, and mouth." *Id.* As for his *Brady* claim, Smith alleges that not only were the circumstances of his confession suppressed, but also these so-called implements of torture were never disclosed to the prosecutors. *Id.* at 5. Smith further claims that defendants "suppressed and destroyed evidence of systemic torture and abuse in Area 2, obstructed investigations into the CPD's systemic torture, and discredited findings of systemic torture." *Id.* Based on these reasons, the district court denied defendants motion dismiss Smith's *Brady* claim. These reasons are inapplicable here.

First, the *Smith* court ruled that the *Brady* claim survived because of the defendants' failure to disclose alleged "implements of torture" – including a plastic bag, rubber nightstick, and plaintiff's bloody clothes. While Plaintiff does make a boilerplate (cut and paste) "implements of torture" allegation, there are no facts in the complaint that allege actual implements of torture were used on Plaintiff or that they were

7

suppressed. Second, Smith was arrested and charged in 1983, while Plaintiff was arrested and charged in 1992. The so-called evidence of "systemic torture" was well known by 1992 – as alleged in Plaintiff's' complaint. (Complaint at ¶46). *Smith* recognizes this point and the court explained its rationale for denying the motion:

> Defendants specifically assert that the Andrew Wilson case was highly-publicized before Plaintiff's 1984 criminal trial. Wilson's convictions stemmed from an occurrence that occurred in February 1982, his first criminal trial took place in 1983, and, in 1987, the Supreme Court of Illinois reversed and remanded Wilson's convictions based on the involuntariness of his coerced confession. That Plaintiff and his defense counsel should have known about Area 2's pattern of torture and abuse based on the 1983 Wilson trial asks the Court to ignore Plaintiff's well-pleaded allegations that evidence of the systemic Area 2 torture and abuse was not available to Plaintiff or his counsel at the time of his 1983 suppression hearing. Also, Defendants' argument asks the Court to make an unreasonable factual inference at this procedural posture, namely, that defense counsel and Plaintiff should have known about systemic torture in Area 2 well before evidence relating to this pattern and practice was readily available. (internal citations omitted)

*Smith*, 2016 WL 6948387 * 6.

This is not the case here. Defendants made this clear in their opening brief on Pages 5-9, which Plaintiff failed to even rebut. Plaintiff says that the Goldston report, made public six months before Plaintiff was arrested, concluded, "[i]n the matter of alleged physical abuse, the preponderance of the evidence is that abuse did occur and that it was systematic. The time span involved covers more than ten years. The type of abuse described was not limited to the usual beating but went into such esoteric areas as psychological techniques and planned torture. (emphasis added)." (Complaint at ¶46). Clearly the pattern *Brady* evidence was well known. As such, given the publicity alone, Plaintiff and/or his counsel through exercise of reasonable (or any) diligence could have discovered the vast majority of allegations of torture and misconduct from

8

other cases, particularly because the alleged torture took place roughly ten years before he was arrested and because reports by OPS and the media were made public beginning in 1990. *Harris,* 486 F.3d at 1015. *See Orange v. Burge*, 2008 WL 4425427 at 10 (N.D. Ill. Sept. 25, 2008) (plaintiff could have discovered evidence of Andrew Wilson's alleged torture through the exercise of reasonable diligence because this evidence was presented in "open court" on November 12, 1982 at the hearing on Wilson's motion to suppress). Plaintiff does not dispute this point, nor does he dispute that he had access to the suppression hearings of other alleged victims as cited in the opening brief.

    Plaintiff's reliance on the conspiracy link discussed in *Smith* is similarly unavailing. The premise for the conspiracy argument in *Smith* is based on his allegation that the State's Attorney's Office conspired with defendants to cover up the pattern of abuse at Area 2 and thus deprived plaintiff of this exculpatory evidence. *Smith*, 2016 WL 6948387 * 6. Again, while Plaintiff makes a similar boilerplate statement in his complaint, the facts in his timeline belie it. Plaintiff says that six months before he was arrested Judge Shadur made public the Goldston Report. (Complaint at ¶92). So by 1992, this pattern *Brady* material was available to Plaintiff and anyone else – which makes any reference to *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) irrelevant to this analysis. In *Whitlock*, the court held said "[i]t is not likely that the police may take shelter behind a prosecutor who is conspiring with them to fabricate false evidence against innocent suspects." *Id.* at 576. There is no need to take shelter behind the prosecutors – this information was all public. There is no allegation that Defendants and the State's Attorney's Office conspired to cover up anything beyond information that

9

was in the Goldston report. As such, this conspiracy link argument also fails to keep Plaintiff's *Brady* claim alive.

### III. PLAINTIFF'S FEDERAL CLAIM FOR FALSE TESTIMONY FAILS AS A MATTER OF LAW.

It is hornbook law that Defendants have absolute immunity from liability for any testimony that they provided in Plaintiff's criminal case. *Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983); *Andrews v. Burge*, 660 F. Supp. 2d 868, 875 (N.D. Ill. 2009) (Defendants are entitled to absolute immunity "even if they suppressed evidence or offered false testimony while personally prosecuting Andrews. This is settled law."). Plaintiff – relying on *Patterson* – a non-binding district court decision – says that an exception exists for a "complaining witness." The *Patterson* court adopts this idea based on its reading of *Cervantes v. Jones*, 188 F.3d 805, 809 (7th Cir.1999). *Cervantes* was overturned by *Newsome v. McCabe*, 256 F.3d 747 (7th Cir.2001). Although, *Gauger* indicates that *Newsome* overruled *Cervantes* on other grounds than the absolute immunity issue, citing to *Malley v. Briggs* 475 U.S. 335, 340–341 (1986) to support denying a claim of absolute immunity, that reasoning was rejected by the Supreme Court.

In *Rehberg v. Paulk*, 566 U.S. 356 (2012), the Supreme Court rejected an argument that under *Malley v. Briggs*, "complaining witnesses" are not entitled to absolute immunity. Justice Alito explained:

> At the time § 1983's predecessor was enacted, a "complaining witness" was a party who procured an arrest and initiated a criminal prosecution. A "complaining witness" might testify, either before a grand jury or at trial, but testifying was not a necessary characteristic of a "complaining witness." Thus, testifying, whether before a grand jury or at trial, was not the distinctive function performed by a "complaining witness." A "complaining witness" cannot be held liable for perjurious trial testimony,

10

> *see Briscoe* and there is no more reason why a "complaining witness" should be subject to liability for testimony before a grand jury.
>
> Once the distinctive function performed by a "complaining witness" is understood, it is apparent that a law enforcement officer who testifies before a grand jury is not comparable to a "complaining witness" because it is not the officer who makes the critical decision to press criminal charges, but the prosecutor. It would be anomalous to permit a police officer testifying before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to initiate a prosecution.

*Id.*

The Supreme Court has clarified that the complaining witness exception does change the holding in *Briscoe,* and therefore there is no reason to allow Plaintiff to proceed on such a claim in this case either.

### IV. PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS.

Plaintiff's response still fails to identify the conduct that required intervention: whether Defendants had knowledge of the illegal conduct, or whether these Defendants had a realistic opportunity to prevent it. Instead, Plaintiff says that *Smith* allowed this improper pleading and by extension this Court should follow suit. Nothing binds this Court to follow *Smith* or that argument. Plaintiff should be ordered to identify the conduct that forms the basis for this claim or it should be dismissed with prejudice.

### V. FALSE ARREST AND IMPRISONMENT CLAIMS ARE TIME BARRED.

While Plaintiff says he did not include a false arrest or false imprisonment claim in his complaint, in fact his "smorgasbord" of allegations references the fourth amendment. (Complaint at ¶108). In any event, Plaintiff now makes crystal clear he is not bringing a false arrest or false imprisonment claim, which of course are time-barred.

11

### VI.  GENERALIZED CONSPIRACY ALLEGATIONS DO NOT STATE A CLAIM.

Plaintiff does not address why the facts he alleges amount to a conspiracy. Instead, he cites the district court opinion in *Kitchen v. Burge*, 781 F. Supp. 2d 721 (N.D. Ill. 2011) that allowed a comparable conspiracy claim. Plaintiff does not explain how the facts in this case are similar to *Kitchen*, but even if they are, this opinion is not binding on this Court. As Defendants cited in their opening brief, the district court in *Andrews v. Burge*, 660 F.Supp.2d 868 (2009) rejected an analogous conspiracy claim to this case. Finally, as explained above, any allegation that Defendant Officers colluded with the State's Attorney's Office to cover up Area 2 torture allegations in 1992 is nonsensical. This information was already public by the time Plaintiff was arrested.

### VII.  PLAINTIFF'S IIED CLAIM IS TIME BARRED.

The Seventh Circuit's analysis of when an IIED claim accrues was not premised on whether the plaintiff in that case had been convicted or whether her IIED claim was intertwined with a malicious prosecution claim; it was premised on the court's prior ruling that an IIED claim is not a continuing tort and therefore the claim accrues upon the last injurious act. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013)("If Bridewell is right, however, then Evans must be wrong. The tort of intentional infliction of emotional distress either is a continuing wrong (as she contends) or is not (as Evans held). The idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either."); see also *Evans v. City of Chicago*, 434 F.3d 916, 935 (7th Cir. 2006) overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

Plaintiff cites district courts that have made narrow readings of *Bridewell*. Judge Pallmeyer, on the other hand, soundly rejected this approach:

> But the specific fact pattern of Bridewell was irrelevant to the Court of Appeals' decision. Rather, the court stated a general rule regarding the limitations period for IIED claims, and this is how district courts have consistently interpreted Bridewell, even when malicious prosecution and IIED claims are intertwined. See, e.g., *Chatman v. City of Chicago*, 2015 WL 1090965, *9 (N.D.Ill. Mar. 10, 2015); *Taylor*, 80 F.Supp.3d at 828; *Hill v. City of Chicago*, 2014 WL 1978407, *3 (N.D.Ill. May 14, 2014); *Bamberg v. City of Evanston*, 2014 WL 1612710, *4 (N.D.Ill. Apr. 16, 2014). A successful IIED claim would not necessarily have impugned Plaintiffs' convictions, see *Moore*, 771 F.3d at 446 ("[M]isconduct by the police does not (at least, need not) imply the invalidity of any particular conviction."). Accordingly, it appears that Plaintiffs' IIED claim could have been filed (that is, it was not Heck-barred) even before their convictions were vacated. Nor is the court willing to adopt Plaintiffs' proposed narrow interpretation of Bridewell, a case which appeared to interpret Illinois' one-year statute of limitations as universally applicable to IIED claims. For these reasons, Count VI must be dismissed.

*Phillips v. City of Chicago*, 2015 WL 5675529, at *7 (N.D. Ill. Sept. 24, 2015).

Defendants urge this Court to follow Judge Pallmeyer's approach and dismiss Plaintiff's IIED claim as time- barred.

WHEREFORE, this Court should dismiss the claims asserted in Counts I, III, VI, and VII of the Complaint with prejudice.

                                                Respectfully submitted,

| | |
|---|---|
| /s/ Avi T. Kamionski | /s/ Amy P. Engerman |
| Avi T. Kamionski | Amy P. Engerman |
| One of the Attorneys for Defendants John Duffy, Angelo Pesavento, and William Marley | One of the Attorneys for Defendant City of Chicago |
| Andrew M. Hale | James Sotos |
| Avi T. Kamionski | Amy Engerman |
| Shneur Z. Nathan | Jeffrey Given |
| HALE LAW LLC | Sara Schroeder |
| 53 W. Jackson Blvd., Suite 330 | THE SOTOS LAW FIRM |
| Chicago, IL 60604 | 550 E. Devon Ave., Suite 150 |
| 312-341-9646 | Itasca, IL 60143 |
| | 630-735-3300 |

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he served the foregoing document upon all parties listed on the attached service list by electronic transmission on March 17, 2017.

/s/ Avi T. Kamionski