IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK MAXSON, ) | |
| ) | |
| Plaintiff, ) | No. 16 C 9417 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| JAMES DWYER, JOHN DUFFY, WILLIAM ) | |
| MARLEY, ANGELO PESAVENTO, and the ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark Maxson has brought a nine count complaint against Chicago Police Department Officers James Dwyer, John Duffy, William Marley, and Angelo Pesavento (the "individual defendants"), and their employer, the City of Chicago, claiming that he spent 24 years in prison as a result of a wrongful conviction based on a coerced confession. Count I, brought against the individual defendants under 42 U.S.C. § 1983, alleges deprivation of plaintiff's right to a fair trial, and wrongful conviction; Count II, again brought against the individual defendants, alleges a claim for coercive interrogation; Count III, brought under 42 U.S.C. § 1985 and § 1986, asserts a claim against the individual defendants for conspiring amongst themselves and other unnamed and unsued police personnel, state's attorneys, and mayors, to violate plaintiff's rights to equal protection under the laws; Count IV is a claim against the City brought pursuant to Monell v. Department of Social Services for City of New York, 436 U.S. 658 (1978); Count V is a state law claim for malicious prosecution; Count VI is a state law claim for intentional infliction of emotional distress (IIED); Count VII is a claim for

civil conspiracy under state law; and Counts VIII and IX are brought against the City for respondeat superior liability and indemnification under 745 ILCS 10/9-102.

Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss Counts I (wrongful conviction), III (federal conspiracy), VI (state civil conspiracy), and VII (IIED) for failure to state a claim. For the reasons described below, the motion is granted in part and denied in part.

### **BACKGROUND**[1]

In August 1992 six year-old Lindsey Murdock was murdered, sexually assaulted, and left in an abandoned garage at 10730 S. State Street in Chicago. The body was discovered on August 30, 1992. Later that evening, defendant Pesavento learned that plaintiff was being interviewed by local televison and stating that he had seen the young boy earlier in the day. Pesavento asked plaintiff if he had any information about the boy and whether plaintiff would be willing to help the police. Plaintiff was eager and willing to help and was brought to the Area 2 police station. Plaintiff willingly gave blood and hair samples.

At the station, Pesavento and Marley interrogated plaintiff numerous times, leaving him in a locked room. Defendants Duffy and Dwyer interviewed plaintiff four or five times. Duffy threatened that he would "kick your ass" if plaintiff did not cooperate. Duffy and Dwyer ignored plaintiff's request for an attorney and proceeded with their coercive interrogation. Dwyer repeatedly threatened plaintiff, slapped him, kicked the wind out of him, and ultimately coerced plaintiff into confessing to the crime by pointing his handgun at plaintiff. All of the other

---

[1] The background facts are taken from plaintiff's complaint and are presumed true for purposes of deciding the pending motion. Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).`

2

individual defendants were in close proximity to plaintiff during the interrogations, but did nothing to prevent the abuse.

Prior to trial, plaintiff moved to suppress his confession. He testified about the abusive interrogation that led to his confession. He also testified that he spent three days locked in an interview room with only a steel bench and was told by both Duffy and Dwyer that he could not leave. Duffy falsely testified that plaintiff was never threatened with physical beatings, and that plaintiff had never been kicked, slapped, or threatened with a handgun. Pesavento also testified that plaintiff was never threatened or struck before implicating himself in the murder. Dwyer testified similarly, and also falsely stated that plaintiff never requested to leave the station. Duffy stated that plaintiff willingly spent three nights in the interview room. None of the individual defendants told the assistant state's attorneys for the Felony Review Unit of the abuse they inflicted on plaintiff. The motion to dismiss was denied.

At trial, the only evidence linking plaintiff to the murder was his coerced confession. The serologist witness testified that none of the blood evidence found at the scene, including blood that did not belong to the victim, matched plaintiff's blood. Similarly, the state criminologist witness testified that head and pubic hair samples taken from the victim's clothing did not match either the victim or plaintiff. Nonetheless, plaintiff was convicted and spent 24 years in prison.

Recent DNA testing has revealed that the DNA of convicted murderer Osborne Wade matched the DNA found on the victim's shirt. On September 27, 2016, the Cook County State's Attorney's Office moved to vacate plaintiff's conviction and plaintiff was released. Wade has been indicted for and confessed to murdering Lindsey Murdock.

Plaintiff's complaint alleges that his case in not an isolated occurrence, but rather that his interrogation and torture was a part of a long-standing pattern and practice of racially motivated torture at Area 2 Headquarters in Chicago, including the use of electric shock, baggings, mock executions, Russian roulette and beatings, dating back to the early 1980s when Jon Burge was the commanding officer at Area 2 and began what plaintiff calls the "Burge Reign of Terror." According to the complaint, Burge engaged in a pattern and practice of torture and brutality himself and also supervised, encouraged, sanctioned, condoned, and ratified brutality by other detectives and supervisors in Area 2, including the individual defendants. In 2010 Burge was convicted of perjury and obstruction of justice for falsely denying that he participated in and was aware of and supervised police torture.

Plaintiff's complaint contains very detailed allegations about how several high ranking personnel in the Chicago Police Department, including successive Superintendents, and at least one former mayor and Cook County State's Attorney, concealed their knowledge of the ongoing systemic torture at Area 2.

## DISCUSSION

Defendants have moved to dismiss Counts I, III, VI and VII, for failure to state a claim. A motion under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555 (2007). To be

4

plausible on its face the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**Count I**

As an initial matter, defendants argue that Count I should be dismissed for failure to comply with Fed. R. Civ. P. 8(a)(2), which requires that a pleading that states a claim for relief must contain "a short and plain statement of the claim . . .."

It is true, as defendants argue, that the complaint is anything but short and plain. It starts with a two and a half page introduction that reads more like a press release than a claim for relief. The complaint itself is over forty pages long, with 148 numbered paragraphs, few of which contain details about what the individual defendants did to plaintiff. Most of the complaint details the history of Burge's "Reign of Terror" at Area 2, and how the systemic torture of African Americans by other unsued Area 2 officers, which can no longer be questioned, came to light. The complaint details the abuse found to have occurred in other cases, starting with the arrest and torture of Andrew and Jackie Wilson for the murder of two Chicago police officers in 1982. Indeed, much, if not most of the complaint, appears to have been "cut and pasted" or copied directly from complaints in other pending cases in this district against other Area 2 officers, most notably the complaint in Smith v. Burge, 16 C 3404; see Smith v. Burge, __ F.Supp.3d __, 2016 WL 6948387 (N.D. Ill. Nov. 28, 2016).

Nevertheless, despite the prolixity of the complaint, any argument by defendants that they cannot discern what Count I charges is pure sophistry. Count I alleges that defendants beat and tortured plaintiff into confessing to a crime that they knew he did not commit, falsely

5

testifying at the motion to suppress hearing, and then using the confession to obtain plaintiff's conviction. To the extent that defendants argue that the complaint fails to identify the specific constitutional provisions that they are charged with violating, the court notes that "(a) complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error." Alioto v. Town of Lisbon, 651 F.3d 715, 721 (7th Cir. 2011) (quoting Rabe v. United Airlines, Inc., 636 F.3d 866, 872 (7th Cir. 2011)).

Defendants' more substantive attacks on the complaint fare no better. With respect to Count I, defendants argue that the complaint fails to allege a violation of Brady v. Maryland, 373 U.S. 83 (1983). "A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused." Mosley v. City of Chicago, 614 F.3d 391, 397 (7th Cir. 2010). A defendant's right under Brady is one that "the Constitution provides as part of its basic 'fair trial' guarantee." United States v. Ruiz, 536 U.S. 622, 626 (2002). The duty of disclosure under Brady applies to both police officers and prosecutors. Youngblood v. W. Virginia, 547 U.S. 867, 869-70 (2006). To present a Brady violation, plaintiff must allege: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or because it was impeaching; (2) the evidence was suppressed by the state, either willfully or inadvertently; and (3) the evidence was material, meaning there is a reasonable probability that the result of the proceeding would have been different. Beaman v. Freesmeyer, 776 F.3d 500, 506 (7th Cir. 2015). Put another way, plaintiff must allege and ultimately show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995).

6

Defendants read Count I as alleging two separate Brady claims which they described as: (1) failing to disclose the allegedly coercive tactics used to force plaintiff's confession; and (2) failing to disclose the alleged systemic practice at Area 2 of the use of torture to coerce false confessions.

The first claim is, as defendants argue, foreclosed by Seventh Circuit case law. For example, in Gauger v. Hendle, 349 F.3d 354, 360 (7th Cir. 2003), the court rejected any argument that Brady requires police to disclose truthful versions of statements made during interrogations. The court found the proposed extension of Brady difficult to understand because it "implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence." Id. Nor can Brady be the basis of a claim against police officers for failing to disclose to the prosecutor their tactics in forcing a confession. Sornberger v. City of Knoxville, 434 F.3d 1006, 1029 (7th Cir. 2006). See also Harris v. Kuba, 486 F.3d 1010, 1017 (7th Cir. 2007) (Brady does not support a claim that an officer suppresses evidence by making a false statement to a prosecutor.). Thus, as the Seventh Circuit has most recently made clear, Brady does not support a claim against individual officers for keeping quiet about their own wrongdoing rather than for failing to disclose any existing piece of evidence. Saunders-El v. Rohde, 778 F.3d 556, 562 (7th Cir. 2015). Consequently, plaintiff cannot assert a claim under Brady against the individual defendants for failing to tell the prosecutors of their own use of force against plaintiff to coerce a confession.

Numerous courts in this district have, however, distinguished between events that happened in the interrogation room, of which the plaintiff had actual knowledge, and events that transpired outside the interrogation room. Those cases have held that suppressing the

7

instruments of torture (not present in the instant case) and, more importantly, the suppression of evidence of the systemic torture and abuse in Area 2, and the obstruction of any investigation of the systemic torture, were sufficient to support a Brady claim. See Tillman v. Burge, 813 F.Supp.2d 946, 962 (N.D. Ill. 2011); Cannon v. Burge, 2006 WL 273544, *12 (N.D. Ill. Feb. 2, 2006); Patterson v. Burge, 328 F.Supp.2d 878, 889 (N.D. Ill. 2004); and Ruiz-Cortez v. City of Chicago, 2016 WL 6270768, *16 (N.D. Ill. Oct. 26, 2016).

Defendants counter that in each of these cases "actual evidence" of the underlying crime was suppressed and, perhaps more importantly according to defendants, each predated Saunders-El, which defendants state "indisputably holds that police officers are not required to disclose their misconduct whether that misconduct occurs in or out of the interrogation room." Defendants argue that Saunders-El makes the critical point that there is a fundamental difference between failing to disclose wrongdoing during an investigation and suppressing evidence uncovered in an investigation.

Plaintiff relies predominately on Judge St. Eve's opinion in Smith, from which, as noted above, plaintiff has copied much of his complaint, and which post-dates Saunders-El. Smith concludes that the decision in Saunders-El does not change the reasoning of those earlier cases "as it relates to Plaintiff's allegations of Defendants' suppressing the instruments of their torture, destroying evidence of systemic torture, and discrediting findings of systemic torture . . .. Plaintiff's allegations are distinguished from the facts in Saunders-El because Plaintiff is not merely basing his Brady claim on Defendants 'keeping quiet about their wrongdoing.'" Smith, 2016 WL 6948387 at *5 (quoting Saunders-El, 778 F.3d at 562)).

Defendants argue that <u>Smith</u> is wrongly decided and, in any event, distinguishable. In particular they argue that the court in <u>Smith</u> based its decision on the suppression of the implements of torture used on Smith, and that in the instant case there are no factual allegations of any implements having been used on plaintiff. More importantly, defendants point out that Smith was arrested and convicted in 1983, well before the evidence of systemic torture at Area 2 was made public. In contrast, defendants point out that the instant complaint contains allegations that show that the evidence of abuse in Area 2 was well-known by the time plaintiff was tried in 1994.

Defendants are correct that the complaint contains allegations that would suggest that knowledge of the systemic abuse at Area 2 was leaking out to the public by 1994. Plaintiff also alleges, however, that it is only within the last few years that the extent of the torture and identities of many of the offending offers have been revealed. Indeed, there is nothing in the complaint that would suggest that plaintiff's defense attorneys could have or should have known that these particular police officers were involved in the systemic torture. Consequently, the court agrees with Judge St. Eve's opinion in <u>Smith</u> and concludes that plaintiff has stated a <u>Brady</u> claim.

In any event, whether plaintiff's complaint states a claim under <u>Brady</u> appears to be an academic exercise having little effect on whether Count I states a claim for wrongful conviction. In <u>Saunders-El</u>, the court made abundantly clear that a conviction based on fabricated evidence violates due process, stating "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of liberty in some way." <u>Saunders-El</u>, 778 F.3d at 560 (<u>quoting</u> <u>Whitlock v. Brueggemann</u>, 682 F.3d 567,

9

580 (7th Cir. 2012)). Forcing plaintiff to sign a fabricated confession and then using that confession to deprive plaintiff of his liberty undoubtably alleges a due process violation under Saunders-El.

Next, defendants argue that to the extent that Count I alleges a "false testimony" claim against defendants, they are protected by absolute immunity. See Briscoe v. LaHue, 460 U.S. 325, 330-31 (1983). Plaintiff argues that there is an exception to the rule of absolute testimonial immunity for "complaining witnesses." This argument was rejected by Rehberg v. Paulk, 556 U.S. 356 (2012). Defendants are absolutely immune from any false testimony claims.

Defendants next argue that Count I fails to allege a failure to intervene because it fails to identify the conduct that required intervention, whether defendants had knowledge of the conduct, and had a realistic opportunity to intervene. Chavez v. Illinois State Police, 251 F.3d 612, 625 (7th Cir. 2001). Nonsense. The complaint clearly identifies that certain defendants beat plaintiff and that other defendants were present but did nothing. The complaint also alleges that three defendants testified falsely while the others did nothing. These allegations are sufficient to allege a claim for failure to intervene.

**Counts III and VII**

Defendants argue that these counts contain mere general allegations of a conspiracy which do not state a claim. To plead a conspiracy, plaintiff need only allege that defendants: (1) reached an agreement to deprive him of his constitutional rights; and (2) overt acts taken in furtherance of the conspiracy that actually deprived him of those rights. Scherer v. Balkema, 840 F.2d 437, 441 (7th Cir. 1998). Plaintiff has alleged that the individual defendants conspired among themselves and with the approval and direction of others to coerce plaintiff into

10

confessing and then using that confession to cause his conviction. They are also alleged to have conspired to keep evidence of the systemic abuse of Area 2 from prosecutors and defendants' attorneys. These allegations are sufficient to state civil conspiracy claims.

**Count VI**

Finally, defendants argue that plaintiff's IIED claim is barred by the one year statute of limitations. 745 ILCS 10/8-1. Citing Bridewell v. Eberle, 730 F.3d 672, 678 (7th Cir. 2013), defendants argue that the Seventh Circuit has rejected the continuing tort doctrine for IIED claims and that under Illinois law "a claim of [IIED] in the course of an arrest and prosecution accrues on the date of the arrest." In Bridewell, however, the accused was never convicted of the charge that related to the IIED claim, meaning the court did not need to review the claim in light of Heck v. Humphrey, 512 U.S. 477 (1994), which holds generally that if a claim impugns the validity of a criminal conviction it does not accrue until the conviction is overturned or otherwise set aside.

In Smith, Judge St. Eve addressed this argument and, relying on Parish v. Elkhart, 614 F.3d 677, 683 (7th Cir. 2010), held that under the facts alleged the plaintiff's IIED claim could not accrue until the conviction was vacated. In particular, the Parish court stated (Id. at 684):

> At the heart of Parish's complaint is a claim that the defendant officers fabricated an entire case against him that led to his wrongful conviction. The factual allegations that Parish was innocent and that the officers committed perjury, falsified evidence, coerced witnesses to commit perjury, and withheld exculpatory evidence are all challenges to the conviction that would only have been proper while the conviction was still outstanding if Parish brought them through prescribed post-conviction relief channels. Therefore, under Indiana's adoption of Heck, Parish could not have brought these claims until his conviction was disposed of in a manner favorable to him.

11

As in Smith, plaintiff basis his IIED claim on defendants' coercing, constructing, and fabricating his confession. Because his confession was the only evidence supporting the conviction, he has directly attacked the validity of his conviction. Illinois' adoption of Heck bars a plaintiff from bringing a claim that is inconsistent with his valid conviction until the conviction is set aside. Smith, 2016 WL 6948387 at *15 (and cases cited therein). Consequently, plaintiff's claim did not accrue until September 27, 2016, and is timely.

## **CONCLUSION**

For the reasons described above, defendants' motion to dismiss (Doc. 27) is granted as to plaintiff's "false testimony" claim, and denied in all other respects. Defendants are directed to answer the complaint on or before May 26, 2017. The parties are directed to prepare and file a joint status report using the court's form on or before May 31, 2017. This matter is set for a report on status on June 13, 2017, at 9:00 a.m..


**ENTER: April 26, 2017**

_____
   **Robert W. Gettleman**
   **United States District Judge**