IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK MAXSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 9417 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| JAMES DWYER, JOHN DUFFY, ) | |
| WILLIAM MARLEY, ANGELO PESAVENTO, ) | Magistrate Judge Michael T. Mason |
| and the CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

WRITTEN OPINION entered by Magistrate Judge Michael T. Mason: For the reasons set forth below, the Cook County State's Attorney's Office's motion to quash [76] is granted in part and denied in part. The duplicative motion to quash filed at [78] is terminated as moot. Plaintiff's motion to strike or in the alternative file a sur-reply [95] is denied. Plaintiff's rule to show cause [101] is denied. The duplicative motion for rule to show cause filed at docket [103] is terminated as moot. Defendant's motion to file sur-reply [108] is denied. The 1/11/18 motion hearing is stricken; no appearance is necessary on that date. The 3/13/18 status hearing stands.

## STATEMENT

In this action, plaintiff Mark Maxson is suing former Chicago Police Department detectives James Dwyer, John Duffy, William Marley, and Angelo Pesavento, and the City of Chicago for wrongful conviction, coercive interrogation, and conspiracy, among other claims. As alleged in the complaint, back in 1992, plaintiff presented to the Area 2 police station in what he thought was an effort to assist detectives in the investigation of the sexual assault and murder of a young boy. Instead, plaintiff was interrogated, abused, and kept against his will for three days until he provided a court reported confession to the crime. That court reported confession was apparently witnessed by Detective Pesavento and two Assistant State's Attorneys ("ASAs") from the Felony Review Unit of the Cook County State's Attorney's Office ("CCSAO"), Carlos Weeden and Timothy Joyce. Plaintiff also offered blood and hair samples to, in his own words, "clear his name." Prior to his criminal trial, plaintiff tried, but failed, to suppress his confession. He was ultimately convicted despite the fact that certain blood and hair samples from the crime scene did not match either the victim or plaintiff.

In 2016, new testing revealed that the DNA of another man, Osborne Wade, was mixed with that of the victim's. Wade was indicted for murder and, on September 27,

2016, plaintiff was released and granted a certificate of innocence after spending twenty-four years in prison. This action followed.

Discovery in this matter is ongoing. In light of the pending criminal case against Wade, the parties agreed to limit the preliminary scope of discovery to the 1992 investigation, the development of plaintiff as a suspect, and the prosecution and sentencing of plaintiff. In the parties' own words, this initial stage of discovery "will not include any subpoenas to Osborne Wade, his counsel, or any third party entity involved in the Osborne Wade prosecution, or *Monell* claims." (Dkt. 66 - 7/7/17 Joint Status Report.) The parties have now reached an impasse as to certain discovery disputes, addressed in detail below.

**CCSAO's Motion to Quash[1]**

On October 19, 2017, plaintiff served a third-party subpoena on the CCSAO seeking the production of:

> Listing of all Felony Review Assistants from 1990-1995, including the names and starting and ending dates of all Felony Review Supervisors, during said period; All written policies and procedures, letters, notes, and written material of any kind which relates to the duties, responsibilities, procedures for Felony Review from 1990-1995.

The CCSAO objected to the subpoena, arguing that, given the passage of time, it would require an inordinate amount of effort to determine if such documents even existed. Further, even if they did, the CCSAO questions the relevance of such documents to the issues of this case, in particular given the limitations placed on the initial phase of discovery. The instant motion to quash followed.

In response to the motion, plaintiff explains that he issued the subpoena "in order to begin investigating the conduct of the Felony Review Assistants who responded to the police station" in 1992. (Dkt. 81 - Pl.'s Resp. at 2.) According to plaintiff, the responding Felony Review ASAs "enabled the Detectives into instituting false murder charges" against him which resulted in his wrongful conviction. (*Id.*) Citing a recently released FBI interview of a different Felony Review ASA, Terence Johnson, plaintiff argues that he was charged and convicted as a result of the "systemic collusion" that existed between Chicago Police detectives and the CCSAO.[2] In the FBI interview, Johnson described a culture in which Felony Review ASAs were encouraged to essentially rubber-stamp the charges suggested by detectives, especially in high profile

---

[1] After the briefing on the motion to quash was complete, plaintiff filed a motion to strike portions of the CCSAO's reply or in the alternative to file a sur-reply. (Dkt. 95.) That motion is denied as the Court is capable of ruling on the issues raised in the motion to quash without striking any portions of the reply brief or requiring a sur-reply.

[2] The Johnson interview was released in connection with other wrongful conviction cases against the City, various officers, and ASAs related to the 1994 rape and murder of a woman. Plaintiffs in those cases are commonly referred to as "The Englewood Four."

cases. It is this culture and its effect on the ASAs involved in his case that plaintiff seeks to investigate.

Rule 45(a) allows a party to issue a subpoena commanding a person to produce designated documents at a specified time and place. Fed. R. Civ. P. 45(a)(1)(iii). "The scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26(b)(1)." *In re Kleimar N.V. v. Benxi Iron & Steel Am., Ltd.*, No. 17 CV 1287, 2017 WL 3386115, at *7 (N.D. Ill. Aug. 7, 2017) (internal quotation marks and citation omitted). Under that Rule, parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Pursuant to Rule 45, the court must quash or modify a subpoena that subjects the responding party to undue burden. Fed. R. Civ. P. 45(d)(3)(iv). A burden is considered undue when the burden of compliance with the subpoena would exceed the benefit of the production of the material sought. *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 16 CV 4161, 2017 WL 5478297, at *2 (N.D. Ill. Nov. 15, 2017). To determine whether such an undue burden exists, the court should consider "the likelihood that compliance will result in production of the information, whether the discovery is unreasonably cumulative or duplicative, [and] whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source." *Id.* (quoting *Mosely v. City of Chi.*, 252 F.R.D. 421, 427 (N.D. Ill. 2008)). Generally, non-parties are entitled to "somewhat greater protection" than parties in the context of a motion to quash. *See Patterson v. Burge*, No. 03 CV 4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005). The party seeking to quash the subpoena has the burden of demonstrating that an undue burden exists. *Allstate*, 2017 WL 2017 WL 5478297, at *2.

On the record before the Court, and at this stage of discovery, plaintiff's subpoena is simply too broad in comparison to the burden that would be placed on the CCSAO if full compliance was required. Plaintiff may indeed be entitled to discovery into the effect the alleged "culture of enablement" at the Felony Review Unit had on the ASAs involved in his case. But any such discovery must begin with the basics, not a fishing expedition into the entire Felony Review Unit for a five year period. As the CCSAO points out, "if plaintiff seeks to obtain information regarding the state of mind of the ASAs involved in [his] case, Plaintiff should start with discovery of the ASAs actually involved in the case." (Dkt. 93 – CCSAO's Reply. at 2.)

As such, at this time, the CCSAO need only engage in a reasonable investigation to identify by name any ASAs (including supervisors) that were involved in the investigation, charging, and prosecution of plaintiff. Additionally, the CCSAO shall produce any formal written handbooks, policies, procedures or guidelines that governed those ASAs at the time of the investigation and prosecution. The remainder of the subpoena is quashed, with the understanding that plaintiff may be entitled to additional information down the road.

**Plaintiff's Motion for Rule to Show Cause[3]**

Plaintiff recently filed a motion for rule to show cause seeking an order directing the City of Chicago to fully respond to the following request for production:

> All documents, deposition transcripts, grand jury transcripts, notes or documents of any kind related to the March 12, 2012 statement to the FBI by former ASA Terence Johnson in the Michael Saunders, et al. (Englewood Four) case and related litigation.

The City objected to this request as overly broad and unduly burdensome. The City also took the position that the request sought irrelevant information, confidential documents, and *Monell* discovery in violation of the parties' agreed initial discovery phase.

At the outset, and as the City correctly points out, a motion for a rule to show cause is not the proper vehicle for addressing the discovery dispute at issue. The Court will instead treat plaintiff's filing as a motion to compel. Further, though there is a disagreement as to whether a Local Rule 37.2 conference would have been fruitful, it is clear that the parties did not engage in the requisite conference. This alone warrants denial of plaintiff's motion.

Nonetheless, as to the merits of the motion, plaintiff's discovery request is simply too broad for similar reasons to those stated above. The Court will not require the City to produce each and every document related to the Johnson interview at this time. Plaintiff's motion is denied, again with the understanding that additional production may be appropriate in the future.

Lastly, the Court recognizes that there is a lot at stake in this action and that counsel have a duty to serve as zealous advocates for their clients. However, the recent filings in this matter demonstrate a breakdown of communication between counsel, which simply cannot persist. The Court expects the parties to fully comply with Local Rule 37.2 before filing any future discovery motions. Additionally, absent extraordinary circumstances, future unrequested reply briefs or motions to file sur-replies will be stricken.

**Date: January 10, 2018**                                         /s/ Michael T. Mason

---

[3] After briefing on this motion was complete, the City of Chicago filed a motion to file sur-reply. (Dkt. 108.) Again, the Court is able to properly address the discovery dispute without the need for a sur-reply. Defendant's motion for leave to file sur-reply is denied.